IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Continental Casualty Company  *

v.  * Civil No. CCB-19-1306

Old Republic Insurance Corporation, et al.  *

## MEMORANDUM

This case involves a dispute between insurance companies as to which is liable for a settlement paid in relation to a Florida personal injury case. Now pending before the court is the defendants' motion to dismiss. The motion is fully briefed[1] and no oral argument is necessary. For the reasons stated below, the court will grant the motion as to the claim of equitable contribution and deny it as to the claim of equitable subrogation.

## FACTS AND PROCEDURAL HISTORY

On May 4, 2012, Aldace Turner was attempting to walk down a trailer at his job site when he fell and sustained back injuries. Second Amended Compl. ("SAC") ¶ 21, ECF 5-1. The trailer was placed at the job site by Allied Trailer Sales and Rentals ("Allied") for use by Manhattan, a construction company and the general contractor, and MCC Mechanical, a subcontractor which was providing HVAC installation and mechanical services for the project. *Id.* ¶¶ 23–25. According to the plaintiff, Continental Casualty Company ("Continental"), the trailer was leased by Allied to Manhattan. *Id.* ¶ 23. After Mr. Turner's fall, in August 2012, MCC agreed to take over Manhattan's lease of the trailer, through a "Trailer Takeover Application."[2] *Id.* ¶ 28.

---

[1] The motion to dismiss and opposition were filed in Maryland state court before the case was removed, and the Reply was filed in this court.

[2] According to Continental, "MCC had already assumed possession of the trailer and was operating pursuant to the [agreement to take over Manhattan's lease] on the date of the accident." SAC ¶ 28.

1

Aldace Turner and his wife, Suzie Turner, filed suit against Allied in Florida. *Id.* ¶ 1. At the time, Continental insured Allied pursuant to an umbrella insurance policy, but Allied did not notify Continental about the litigation until after the verdict was returned. *Id.* ¶ 38. Instead, pursuant to the lease agreements for the trailer, which included insurance provisions, Allied tendered its defense to MCC's primary commercial general liability insurer, Travelers Property Casualty ("Travelers Casualty"), *id.* ¶¶ 34–35, and Travelers Casualty assumed exclusive control of Allied's defense in exchange for Allied's agreement not to pursue its contractual indemnity claims against MCC or Manhattan, *id.* ¶¶ 46–47. According to Continental, Travelers Casualty turned down a settlement offer from Suzie Turner and one from Aldace Turner, and proceeded to trial, which resulted in a jury verdict of $3,855,755 against Allied. *Id.* ¶¶ 49–51.

On March 23, 2018, Allied notified Continental of the litigation and the verdict against it. *Id.* ¶ 55. In response, Continental issued a coverage position letter disclaiming coverage on the basis that the underlying insurance limits of liability had not been exhausted and Allied had failed to timely notify Continental of the claim or the underlying suit. *Id.* ¶ 60. On August 14, 2018, Continental then filed this action in the Circuit Court for Howard County, seeking a judicial declaration that it had no coverage obligation for the judgment or, alternatively, a declaration regarding the priority of the coverage among itself and Travelers Casualty, Starr, and Old Republic General Insurance Corporation ("ORIC")[3], which were the various insurance carriers insuring Manhattan and MCC at the time of the accident.[4] *Id.* ¶ 61.

---

[3] While the case caption refers to "Old Republic Insurance Corporation" it appears the full name is "Old Republic General Insurance Corporation." *See* SAC ¶ 1.

[4] Travelers Casualty was the primary insurer of MCC, and ORIC was the primary insurer for Manhattan. SAC ¶¶ 41, 43. Starr had issued an umbrella liability policy to Manhattan. First Complaint ¶ 31, ECF 1-3.

On September 18, 2018, the Turners, Allied, Travelers Casualty, Travelers Indemnity Company of Connecticut ("Travelers Connecticut"),[5] and Continental attended a mediation in Orlando to resolve who would pay the judgment. *Id.* ¶¶ 62–63. At the mediation, the Turners, Travelers Casualty, Travelers Connecticut, and Allied negotiated an agreement, which Continental alleges was "collusive," wherein Travelers Casualty and Travelers Connecticut agreed to pay the Turners $2,000,000 pursuant to the limits of their respective policies, and the Turners agreed to release Travelers Indemnity from any coverage obligation it had to Allied under the MCC excess policy. *Id.* ¶ 64. Under the agreement, Allied also released Travelers Indemnity, Travelers Casualty, and Travelers Connecticut from any liability they had under the insurance policies. *Id.* ¶ 65. Also, Allied assigned its rights under the Continental umbrella policy to the Turners, and the Turners filed suit against Continental for recovery of the rest of the judgment. *Id.* ¶ 67. On January 23, 2019, Continental settled with the Turners in that case for $350,000. *Id.* ¶ 68; Settlement Agreement, SAC Ex. 12, ECF 5-14.

On February 12, 2019, Continental filed its first amended complaint and, on April 1, 2019, filed its second amended complaint. In the second amended complaint, Continental brought claims of equitable contribution and equitable subrogation against Travelers Casualty, Travelers Indemnity, Travelers Connecticut (collectively, "Travelers") and ORIC, arguing that they should reimburse Continental for its settlement payment to the Turners. Travelers filed a motion to dismiss in the Circuit Court for Howard County, to which Continental filed its opposition. On May 1, 2019, Continental settled with ORIC, and ORIC was dismissed from the case. Notice of Removal at 2, ECF 1. Continental and ORIC were both Illinois citizens, but

---

[5] Travelers Connecticut issued the primary liability policy for Allied at the time of the accident. SAC ¶ 44. Travelers Indemnity Company ("Travelers Indemnity"), which had issued an excess liability policy to MCC, did not attend the mediation. *Id.* ¶ 42, 62.

3

with ORIC dismissed, complete diversity existed, and Travelers removed the case to this court. *Id.*

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

Choice of Law:

Travelers applies Maryland law throughout its motion to dismiss, while Continental argues that Florida law should apply. As the relevant substantive law is the same in Florida and Maryland, the court finds it unnecessary to determine at this stage which law should apply.

Equitable Contribution:

Both Florida and Maryland law provide for equitable contribution in cases of a common contractual liability or obligation.[6] *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1291 (M.D. Fla. 2017); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership*, 109 Md. App. 217, 280–81 (1996); *see also Helmet House Corp. v. Stoddard*, 861 So.2d 1178, 1179–80 (Fla. Dist. Ct. App. 2003) (adopting the reasoning of *Hartford Accident*). A common liability arises when the parties "are jointly liable or jointly and severally liable on an obligation." *Helmet House*, 861 So.2d at 1180 (citing *Hartford Accident*, 209 Md. App. at 281).

Continental does not sufficiently plead a common liability or obligation with Travelers. Instead, it alleges only that it and Travelers both provided insurance coverage to Allied. Although the coverage provided by both insurance policies need not be identical for there to be a common liability, the "particular risk actually involved in the case" must be covered by both policies so "the coverage is duplicate." *Zurich*, 248 F. Supp. 3d at 1291 (citation omitted). In the second amended complaint, Continental states that the coverage was not duplicate, as Continental would not provide coverage until "the scheduled and unscheduled underlying insurance limits of liability" were exhausted. SAC ¶ 60. Therefore, Continental has not sufficiently alleged that it and Travelers were jointly or jointly and severally liable on any obligation. *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, at *3 (M.D. Fla. Oct. 31, 2007)[7] ("Obviously, primary and excess carriers have different obligations, one of which ends before the other begins.").[8]

---

[6] Continental appears to seek contribution against Travelers as a co-obligor, not as a joint tortfeasor. *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership*, 109 Md. App. 217, 281 (1996). To the extent Continental seeks contribution based on tort liability, it has not sufficiently alleged that it and Travelers are joint tortfeasors.

[7] Unreported opinions are cited for the soundness of their reasoning, not for any precedential value.

[8] Additionally, Continental is not requesting contribution, but rather is seeking the entire amount of the settlement. *See Hartford Accident*, 109 Md. App. at 280 ("[C]ontribution is the distribution of loss among culpable parties in

Equitable Subrogation:

"[S]ubrogation is not a cause of action in and of itself. Rather, the doctrine of subrogation allows a party to step into the shoes of another in order to pursue a cause of action." *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 742 (2007). The elements of equitable subrogation[9] under Maryland and Florida law are basically the same. Under Maryland law, the elements of subrogation are: "(1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights or interests." *Pulte Home*, 174 Md. App. at 743. Under Florida law, the elements of subrogation are: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." *Zurich*, 248 F. Supp. 3d at 1287 (citation omitted). "If these requirements are met, the doctrine of equitable subrogation entitles the subrogee to all rights of its subrogor." *Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 308 Md. 315, 319 (1987). Specifically relevant to this case, "through equitable subrogation, the excess insurer stands in the shoes of the insured and succeeds to the rights and responsibilities that the insured would normally have against the primary insurer." *Zurich*, 248 F. Supp. 3d at 1287 (internal quotations, alteration, and citation omitted).

First, Travelers argues that Continental does not meet the requirements of equitable subrogation, because its payment to the Turners was not for the debt for which another was

---

accordance with their proportionate shares."). Continental points to *Interstate Fire and Cas. Co. v. Dimensions Assurance Ltd.*, in which the plaintiff recovered the entire amount of a settlement under a claim of equitable contribution, but the dispute there centered on contract interpretation, and it is not clear that the defendants ever challenged the equitable contribution claim as improperly pled. No. GJH-13-3908, 2017 WL 3142764, at *1 (D. Md. July 21, 2017) (opinion after remand from the Fourth Circuit).

[9] *Pulte* refers to "legal subrogation." It appears that this is simply a different term for the doctrine of equitable subrogation. *See Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 308 Md. 315, 319 (1987) (providing the elements of equitable subrogation, which are the same as those provided in *Pulte*).

primarily liable, and Continental made the payment as a volunteer. As to the first contention, Continental has sufficiently alleged in its second amended complaint that it was not liable for any part of the judgment verdict because it was not notified of the litigation by Allied, and that Travelers is liable for the entire verdict as the excess was caused by its failure to settle. As to the second contention, Continental sufficiently alleges it did not act as a volunteer, as it paid the debt to protect its own interests, such as "to avoid suffering a loss if the obligation is not discharged." *Galen Health Care, Inc. v. Am. Cas. Co. of Reading, Penn.*, 913 F. Supp. 1525, 1531–32 (M.D. Fla. 1996). Additionally, that Continental continues to claim it had no legal liability for the judgment does not make it a volunteer in its settlement with the Turners; according to Continental, Travelers had disclaimed its liability for the rest of the judgment, executed a settlement agreement with the Turners, and the Turners had sued Continental for the rest of the judgment. Continental has sufficiently alleged, at this stage, that its settlement with the Turners was a "justified intervention in the defendant's affairs." *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 305 (2007) (citation omitted).

Travelers also argues that even if Continental can assert Allied's rights against Travelers, Allied has no such rights because Allied released all claims against Travelers.[10] The party asserting the affirmative defense of release bears "the burden of proving that the elements of release are satisfied." *Auslander v. Helfand*, 988 F. Supp. 576, 580 (D. Md. 1997). Further, affirmative defenses, such as release, are "not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in the complaint." *Alexander v. UIP Prop. Mgmt.*, No. DKC 14-2469, 2015 WL 1472004, at *3 (D. Md. March 30, 2015). In order for the

---

[10] Continental claims that Travelers breached their duty to defend and negligently failed to settle the claim within the primary policy limits. Maryland allows such claims by the insured against the insurer. *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 390–91 (1994). Florida also allows such claims, either under a breach of contract action or under statute. *Macoa v. Gov. Employees Ins. Co.*, 953 So.2d 451, 455–56 (Fla. 2006).

7

court to dismiss Continental's claim on the basis of release, the affirmative defense of release must be "apparent on the face of" Continental's complaint. *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 525 (D. Md. 2014).

At this stage, the court declines to rule on Travelers' affirmative defense of release, as it is not apparent on the face of Continental's second amended complaint. The complaint makes reference to Allied's release of its claims against Travelers and attaches the Mediation Agreement between the Turners, Travelers, and Allied, wherein Allied agreed "to execute a full release of all claims in favor of Travelers." SAC ¶¶ 65, 66; Ex. 11. But without more information, the court cannot determine the validity of the release, the scope of release, and the parties to the release. Additionally, Continental argues that the release was executed in bad faith with the intent to force Continental to pay the rest of the judgment. SAC ¶ 66. Therefore, there are issues surrounding the release that are not appropriate to resolve on a motion to dismiss.

## CONCLUSION

For the reasons stated above, the court will grant the motion to dismiss as to Count I, the claim for equitable contribution, and deny the motion to dismiss as to Count II, the claim for equitable subrogation. A separate order follows.

12/18/19
Date

Catherine C. Blake
United States District Judge